IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| YOLANDA PENNINGTON | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. G-08-148 |
| | § | |
| COUNTY OF GALVESTON | § | |

## OPINION AND ORDER

Before the Court, with the consent of the Parties pursuant to 28 U.S.C. § 636(c)(1), is the "Defendant County of Galveston's Motion for Summary Judgment" which seeks summary judgment as to all claims asserted against the County by Plaintiff, Yolanda Pennington. Having given careful consideration to the Motion, Pennington's response, the County's reply, the summary judgment evidence and relevant applicable law, the Court now issues this Opinion and Order.

## FACTUAL BACKGROUND

Pennington began working in the Information Technology Department (IT) of Galveston County in November 2001, and ultimately rose to the level of Assistant to the Director. Since Pennington has substantially failed to submit any specific or meaningful factual allegations to support her claims, or even definitively identify those claims, the Court sees no need to exhaustively regurgitate the County's perceived, and virtually undisputed, version of the history leading up to Pennington's termination. It will suffice to note that, *inter alia*, after IT caused a delay in the opening of the new Justice Center in 2005; and after a number of IT employees left the department in 2007 after complaining of Pennington; and after an independent investigation in 2008 uncovered dysfunction in the department due in part to Pennington; and after the

supervision of IT was transferred from the Budget Office to the Director of Special Projects to address the dysfunction; and after the transfer met with resistance by the IT Director and Pennington; and after serious performance problems were uncovered following the transfer; Pennington was fired on July 7, 2008, and the IT Department was completely overhauled.

On or about December 18, 2007, prior to her termination, Pennington filed a charge of discrimination with the Texas Workforce Commission and the EEOC claiming discrimination based on sex[1], retaliation and age. On June 12, 2008, twenty-six days before her firing, she filed the instant lawsuit asserting a claim of age discrimination, a claim of retaliation, and, under a generous reading of the complaint, an age-based hostile work environment claim. The County has now moved for summary judgment.

## SUMMARY JUDGMENT STANDARD

The Court will not dwell on the well-established summary judgment calculus except to state that it has tried, as best it can given the paucity of Pennington's factual allegations, to view the evidence and all reasonable inferences from that evidence in the light most favorable to Pennington, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and has tried to avoid making any credibility determinations. Dibidale of La., Inc. v. American Bank & Trust Co., 916 F.2d 300, 307-08 (5th Cir. 1990) ("Credibility assessments are not fit grist for the summary judgment mill.")

---

[1] While Pennington's claims are sometimes difficult to identify, it seems very clear that she has abandoned any sex discrimination claim, therefore, the Court will not address it.

PENNINGTON'S SUMMARY JUDGMENT EVIDENCE

In its attempt to ascertain the factual bases of Pennington's claims, the Court has combed through her summary judgment "evidence." According to Pennington's complaint and her own affidavit the County "intentionally subjected (her) to abusive hazardous and unhealthy working conditions,…subjected her to outrageous and offensive verbal abuse" from "a human resources and professional services director," subjected her "to repeated offensive age related statements from department heads and staff," required her to work "under a Justice Administrative supervisor who uttered maliciously and belittling statements to her in front of co-workers" and exposed her to "unreasonable risks to (her) health and safety."

Pennington has also submitted an affidavit from Michael Crumpton who served as her supervisor. In his affidavit, Crumpton asserts that "Galveston County discriminated against Yolanda Pennington on account of her age" because her "promotion was delayed repeatedly between October 2007 and April 2008" and the County Judge, James Yarbrough, in a Grievance Hearing in August 2007, "reiterated that he believed that he had made it clear during meetings in late 2007 that Ms. Pennington was not to be promoted." He also claims that he observed "Galveston County create, establish, or permit the establishment of a hostile work environment for Yolanda Pennington" by unfairly criticizing her work performance in a meeting and follow-up meeting in July 2007; by uncovering "indications of collusion to discredit Ms. Pennington" through an "intra-departmental investigation" of critical "allegations made by Ms. Kathy Ferguson about Ms. Pennington's job performance;" by allowing the occurrence of "other incidents that made it difficult for Ms. Pennington to carry out her job duties;" and by commissioning an investigation of the IT Department which resulted in a report that was "inconsistent, incomplete

and difficult to understand" but which "did acknowledge the existence of hostile work environment issues." Crumpton also swears that in December 2007 he heard Judge Yarbrough, state that "anyone who files suit against the County should not continue working for the County."

Pennington also relies on an affidavit from Hoi Heldt, an Assistant Director in the IT Department. Heldt avers that at some unidentified time "a note was affixed to the office door" of Pennington "which substantially stated that Ms. Pennington was 'old' or 'too old' to perform the requirements of her job." According to Heldt, the note was "one of a series of incidents" which characterized Pennington as being too old to perform her job, which were "tolerated, if not approved, by the Defendant."

Pennington's final affidavit is that of Victoria Diaz, an IT employee. Diaz states that "Galveston County discriminated against Yolanda Pennington on account of her age" and subjected Pennington to a hostile work environment because, "on several occasions Erin Quiroga told me & the rest of IT-Admin that we worked for 'the devil' and that she did not even know why Mrs. Pennington was in that position that she was incompetent and did not know what she was doing."

## PENNINGTON'S AGE DISCRIMINATION CLAIM

When Pennington filed her charge of discrimination she was 57 years of age, therefore, she was within the class of persons protected against age discrimination by both the federal and state statutes.

Since Pennington has not produced any direct evidence of age discrimination[2] she must establish the familiar *prima facie* case required by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), as modified for age discrimination cases, in order to avoid summary judgment. In pertinent part, Pennington must show that there is sufficient evidence from which the fact-finder could conclude that her termination was based upon her age. Rachid v. Jack-in-the-Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004)   Unfortunately, for Pennington, affidavits that do no more than set forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a Motion for Summary Judgment, Orthopedic & Sports Injury Clinic v. Wang Labratories, Inc., 927 F.2d 220, 225 (5th Cir. 1991); general conclusory allegations do not become adequate summary judgment evidence simply because they are put in affidavit form. Castillo v. Bowles, 687 F.Supp. 277, 280 (N.D. Tex. 1998)   When measured against this standard it is clear that Pennington's affidavits are textbook examples of general allegations and legal conclusions which will not satisfy a non-movants burden. Reese v. Anderson, 926 F.2d 494, 499 (5th Cir. 1991)   Pennington has simply submitted no specific factual evidence that the decision to terminate her employment with the County was motivated by her age. Consequently, her age discrimination claim must be dismissed.

---

[2] An anonymous note attached to her office door and statements by two employees *under* Pennington's supervision that she was too old to perform her job duties do not constitute direct evidence of age discrimination. See Brown v. CSC Logic, Inc., 82 F.3d 651, 655 (5th Cir. 1996) (For a workplace remark to constitute direct evidence, it must, *inter alia*, be made by an individual with authority *over* the adverse employment action at issue.)

5

PENNINGTON'S HOSTILE WORK ENVIRONMENT CLAIM

Neither the United States Supreme Court nor the Fifth Circuit has recognized an age-based hostile work environment claim; however, the Fifth Circuit and some District Courts within this Circuit have assumed that such a cause of action exists.  See e.g. McNealy v. Emerson Electric Co., 121 Fed. Appx. 29, 34 & n.1 (5th Cir. 2005) (assuming without deciding that the ADEA allows for a hostile environment claim); Lacher v. West, 147 F.Supp. 538, 543 (N.D. Tex. 2001); Buchanan v. Exxon Mobil Corp., 2006 WL 492605 (S.D. Tex.); Soliz v. Associates in Medicine P.A., 2007 WL 2363304 (S.D. Tex.).  At least one Texas court has recognized such a claim under the TCHRA.  City of Houston v. Fletcher, 166 S.W.3d 479, 4889 (Tex. Civ. App. -- Eastland, 2005, reh'g overruled, review denied)  This Court will, therefore, also assume such a claim exists.

All Courts to consider such a claim have agreed that the elements of an age-based hostile work environment claim are as follows:  (1) the employee belongs to the protected class (40 years or older); (2) the employee was subjected to unwelcomed harassment; (3) the harassment complained of was based upon age; (4) the harassment complained of affected a "term, condition or privilege of employment," (i.e., the harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment); and (5) *respondeat superior*, (i.e., that the employer knew or should have known of the harassment in question and failed to take prompt remedial action) unless the harassment came directly from the employee's immediate or a higher supervisor.

Ignoring all the other elements, Plaintiff has insufficient evidence to establish that the age-based harassment[3] she complains of was severe or pervasive enough to alter the conditions of her employment.  The only non-conclusory, non-specific evidence of age-related harassment cited by Pennington is the anonymous note affixed to her door at some undisclosed time, and the age-related comments of two IT employees under her direct supervision that she was too old for the job to which she hoped to be promoted, which were overheard by Pennington.[4]  All the rest of Pennington's "evidence" consists of the type of general allegations and legal opinions which will not defeat a summary judgment motion.  Since Pennington cannot establish an environment of severe and pervasive age-based harassment, the Court need go no further:  a complete failure of proof on an essential element of the non-movant's case renders all other facts immaterial and, therefore, there can be no genuine issue of material fact to support a trial of the claim.  Geiserman v. McDonald, 893 F.2d 787, 793 (5th Cir. 1990) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986))   Accordingly, Pennington's age-based hostile work environment claim must be dismissed.

## PENNINGTON'S RETALIATION CLAIM

To avoid summary judgment on her claim of retaliation, Pennington must demonstrate "(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse

---

[3]  Workplace harassment alone by co-workers when not based on any protected status, like age, is not actionable.  Farpella-Crosby v. Horizon Health Care, 97 F.3d 803, 806 n.2 (5th Cir. 1996) (Title VII does not protect employees from hostile conduct that is not based on their protected status)

[4]  Pennington deposition at pp. 20-23.

7

employment action." Evans v. City of Houston, 246 F.3d 344, 352 (5th Cir. 2001) (quoting Long v. Eastfield College, 88 F.3d 300, 304 (5th Cir. 1996)    Clearly, filing a charge of discrimination and a subsequent related lawsuit are protected activities, 42 U.S.C. § 2000e-3(a), and termination is, of course, the quintessential adverse employment action. Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995)    Therefore, the key to the survival of Pennington's retaliation claim is whether she can demonstrate the necessary causal link between the two.

　　　The Court must admit that Pennington's retaliation claim is, at best, bewildering. Pennington checked the "retaliation" box on her charge of discrimination, but offered no factual support for it in her attached affidavit. She mentioned it as a cause of action in her original complaint, but failed to allege any supportive facts. Her counsel identified it as a cause of action in Penningotn's response to the County's Motion for Summary Judgment, but offered no argument to support it. Pennington, at her deposition, did not even acknowledge it as one of her claims when asked "You're suing why?" Pennington's summary judgment affidavit, which is the same one she submitted to the Texas Workforce Commission, is silent as to any retaliatory facts. In fact, Pennington's only personal allegation of retaliation is her answer to the County's Interrogatory 6: "I was retaliated against because of my lawsuit." If this were the totality of Pennington's summary judgment evidence it would clearly be inadequate, especially in light of the mountain of evidence submitted as justification for her termination by the County. See e.g. Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993) ("Summary judgment is appropriate where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant, or where it is so overwhelming that it mandates judgment in favor of the movant.")

That being said, the Court notes that buried in the final paragraph of the affidavit of Michael Crumpton is the following averment: "While discussing Ms. Pennington's suit against the County during a December 2007 meeting with Judge Yarbrough and James Wilson, Judge Yarbrough said that *any one who filed suit against the County should not continue working for the County*." (emphasis added)   While neither party, most astonishingly Pennington, has even acknowledged the existence of this evidence, the Court finds it of utmost significance when, as is required, Crumpton's reference to Plaintiff's "suit" is reasonably inferred to be referring to her charge of discrimination which was, indeed, filed in December 2007.  Then, completing the relevant evidentiary time-line, Pennington actually "filed suit against the County" on June 12, 2008, and was fired, and ceased to "continue working for the County" on July 7, 2008.

Unfortunately, for the County, Judge Yarbrough's statement is direct evidence that he may have had a retaliatory motive for Pennington's termination which "presents a genuine issue of material fact whether [retaliatory] animus in part motivated or was a substantial factor in the contested employment action." Fierros v. Texas Departmetn of Health, 274 F.3d 187, 195 (5th Cir. 2001) (quoting Brown v. East Mississippi Elect. Power Ass'n., 989 F.2d 858, 861 (5th Cir. 1993)), see also Long, 88 F.3d at 305 n.4 ("a plaintiff need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the causal link element of a *prima facie* case.")   In the opinion of this Court, Crumpton's affidavit, by itself, precludes summary judgment as to Pennington's retaliation claim. Id. Cf. Vance v. Union Planters Corp., 209 F.3d 438, 442 (5th Cir. 2000) (noting that even if a Title VII plaintiff were the only witness to testify about the employer's discriminatory statements, "that would not warrant taking the case out of the jury's hands."); Portis v. First National Bank, 34 F.3d 325, 329-30 n.10

(5th Cir. 1994) (same)  Consequently, with one sworn sentence, Crumpton has rescued Pennington's foundering retaliation claim from an otherwise certain demise.

For the foregoing reasons, it is **ORDERED** that the Motion for Summary Judgment (Instrument no. 29) of Galveston County is **GRANTED** as to Pennington's claims of age discrimination and age-based hostile work environment, and those claims are **DISMISSED with prejudice**, but **DENIED** as to Pennington's claim of retaliation.

**DONE** at Galveston, Texas, this _____11th_____ day of February, 2010.

_____
John R. Froeschner
United States Magistrate Judge